UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

------------------------------------------------------------------- x
AMY T. HEATH,                                      :

                                          :    **CASE NO. 1:17-cv-225**
                                          :
                    Plaintiff,                :     **COMPLAINT**
                                          :
                                          :
           -against-                 :
                                          :
GLAXOSMITHKLINE LLC,                :
                                          :
                Defendant.          x
-------------------------------------------------------------------

Plaintiff Amy Heath, by her attorneys, Liddle & Robinson, L.L.P. alleges as follows:

### THE NATURE OF THE ACTION

1.       This is a civil action for damages and remedies for violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq*. ("ERISA") and the recovery of benefits pursuant to 29 U.S.C. § 1132(a)(1)(B). Plaintiff's claim arises out of Defendant's denial of severance pay benefits in violation of the 2014 GSK Severance Pay Plan (the "Plan") following her termination.

### THE PARTIES

2.       Plaintiff Amy Heath ("Heath") is a citizen and resident of Wake County, North Carolina. She was employed by GSK for 27 years, until her employment was terminated by the Defendant on or about March 1, 2015.

3.       Defendant GlaxoSmithKline LLC ("GSK"), is a pharmaceutical company that is a citizen of the United Kingdom and Delaware, and a resident of Delaware. It is a corporation organized under the laws of Delaware, with its principal place of business located at 980 Great

West Road, Brentford, Middlesex, TW8 9GS, United Kingdom. GSK is the successor to the businesses of Burroughs Wellcome and Glaxo Wellcome.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e) as this is a civil action asserting a claim that arises under the Constitution, laws, or treaties of the United States.

5.      This Court also has diversity jurisdiction under 28 U.S.C. § 1332(a) because this action is between citizens of different states, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. Heath seeks damages of at least $221,940, in addition to interest, attorney's fees and costs.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Heath's claim occurred in the Middle District of North Carolina, and under 29 U.S.C. § 1132(e)(2), because the Plan was administered in the Middle District of North Carolina and the breach of the Plan took place in the Middle District of North Carolina.

## FACTUAL BACKGROUND

7.      On or about November 23, 1987, Heath started her employment at GSK.

8.      On or about January 1, 2014, GSK adopted the Plan.

9.      The Plan was "sponsored and administered by GlaxoSmithKline LLC."

10.     Heath accepted the terms of the Plan as part of her employment with GSK.

11.     On or about December 2014, GSK announced layoffs of approximately 900 employees, including Heath.

12.     Prior to her termination by GSK, Heath was employed as a Director of Clinical Statistics.

2

13.     GSK informed Heath that she would not receive severance pay benefits under the Plan because GSK had negotiated an agreement with a supplier, PAREXEL ("PXL"), to offer Heath a position that GSK alleged was reasonably comparable to her GSK position.

14.     GSK informed Heath that if she did not accept the offer of employment from PXL, she would be considered as voluntarily resigning from her position at GSK.

15.     If Heath voluntarily resigned from GSK, she would not be eligible for the vesting of any awards of stock that she received from GSK in 2013 or 2014.

16.     These shares of stock would vest if Heath accepted PXL's offer of employment.

17.     On or about January 26, 2015, Heath received an offer of employment from PXL for the position of Director of Biostatistics, and she accepted that offer on February 5, 2015.

18.     On March 1, 2015, Heath's employment at GSK was terminated.

19.     On March 2, 2015, Heath began her employment at PXL.

20.     The position PXL offered Heath was not reasonably comparable to the position she held at GSK at the time of her termination.

21.     Although Heath's base pay at PXL was identical to her base pay at GSK, the position offered Heath at PXL did not include substantial other compensation and benefits that had been included in her GSK compensation, including bonus pay, stock awards, and pension and 401K contributions.

22.     According to the terms of the Plan, each GSK employee was entitled to severance benefits equal to two weeks' pay for each completed year of service if their employment was terminated because of a "permanent layoff as a result of a reduction in force or job elimination and he/she is not offered another reasonably comparable position" and said employee signed and did not later revoke a General Release.

3

23.     According to the terms of the Plan, weekly pay consists of an employee's base salary plus target bonus. Target bonus is the bonus opportunity available to the employee if both the business and the employee achieve on-target performance in the year employment terminates.

24.     Heath's base salary at GSK for 2014 was $165,730.

25.     In 2014, Heath also received a bonus from GSK of $47,977.

26.     In 2014, Heath also received pension and 401K contributions from GSK in the amount of $26,868.

27.     In 2014, Heath also received an award of Long Term Incentive Stock valued at 48,000.

28.     Heath's total GSK compensation for 2014 was $288,575.

29.     Heath's total annual compensation under her PXL offer was projected to be $168,730, a 42% reduction in her compensation compared to her GSK compensation in 2014.

30.     GSK offered Heath a one-time "bridge" payment in two semi-annual installments totaling $26,113.85 to cover "the difference in value between "the GSK and PAREXEL Plans for the first 12 months."

31.     The bridge payments offered did not cover the difference in Heath's compensation at GSK and her reduced compensation at PXL for even one year.

32.     Not only was the PXL position offered to Heath not reasonably comparable in terms of compensation, it also was not comparable in terms of responsibility and opportunity for advancement.

33.     Heath's 27 years of completed service at GSK entitled her to 54 weeks of severance pay if she qualified for severance pay under the Plan.

34.     In 2014, Heath's weekly pay at GSK was $4,110.

35.     Heath thus is entitled to 54 weeks of severance multiplied by $4,110 or a total severance benefit of $221,940.

36.     By letter dated November 20, 2015, Heath requested payment of the severance benefits she was entitled to receive under the Plan at the time of her termination on the grounds that the PXL position she was offered was not reasonably comparable to her position at GSK.

37.     By letter dated February 18, 2016, GSK informed Heath that she did not satisfy the eligibility rules for entitlement to severance pay under the Plan because her position at PXL was reasonably comparable to her GSK position at termination.

38.     By letter dated April 15, 2016, Heath appealed GSK's denial of her claim for severance pay.

39.     By letter dated June 14, 2016, GSK informed Heath that her appeal was denied.

## CAUSE OF ACTION

## VIOLATION OF ERISA § 502(A)(1)(B)

40.     Heath repeats and realleges the allegations contained in the previous paragraphs as if separately set forth herein.

41.     By its actions, described above, GSK's refusal to make severance payments to Heath constitutes a wrongful denial of benefits under 29 U.S.C. § 1132(a)(1)(B).

42.     29 U.S.C. § 1132(a)(1)(B) provides that a plan participant may sue to recover benefits owed to them under the terms of the plan, to enforce their rights under the terms of the plan, or to clarify their rights to future benefits under the terms of the plan.

43.     Heath has exhausted the applicable administrative review procedures and brings this action to recover severance benefits in an amount to be determined at trial but not less than $221,940 along with attorney's fees and costs, and prejudgment and post judgment interest.

5

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Amy Heath prays for the following relief:

a. For payment of the severance benefits to which she is entitled pursuant to the express

terms of the Plan;

b. For attorneys' fees under 28 U.S.C. § 1132(g)(1), the costs of maintaining this action,

and prejudgment and post judgment interest; and

c. For such other and further relief as the Court may deem just and proper.

Respectfully submitted, this 16th day of March, 2017.


By: /s/ James R. Hubbard
    James R. Hubbard
    N.C. State Bar No. 13196
    LIDDLE & ROBINSON, L.L.P.
    800 Third Avenue
    New York, New York 10022
    Tel. (212) 687-8500
    Fax (212) 687-1500
    E-mail: jhubbard@liddlerobinson.com

    Attorneys for Plaintiff

Of Counsel:
Blaine H. Bortnick*
Krista E. Bolles*
LIDDLE & ROBINSON, L.L.P.
800 Third Avenue
New York, New York 10022
Tel. (212) 687-8500
Fax (212) 687-1500

*Not admitted in the Middle District of
    North Carolina